**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

MICHAEL SWAFFORD,                    )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )        No. 4:23-cv-01059-MTS
                                     )
LELAND DUDEK, *Acting Commissioner of* )
*the Social Security Administration*,[1] )
                                     )
            Defendant.               )

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by Defendant, the Acting

Commissioner of the Social Security Administration.  For the following reasons, the Court

affirms.[2]

**I.    Background**

On November 29, 2017, Michael Swafford ("Plaintiff") applied for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434.  (Tr.

645).  Plaintiff alleges disability due to degenerative disc disease, chronic arachnoiditis, chronic

back pain, spinal stenosis, back problems caused by a failed surgery, anxiety, depression, hand

numbness, feet numbness, and knee problems, with an alleged onset date of June 16, 2016.  (Tr.

194, 205).  After the Commissioner initially denied Plaintiff's application, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  On September 05, 2019, following a

---

[1] Leland Dudek is now the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision."  After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 658), the Appeals Council did not assume jurisdiction in this matter; thus, the ALJ's decision stands as the Acting Commissioner's final decision.

hearing, an ALJ issued her decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 22).  Plaintiff then requested review of the ALJ's decision by the Appeals Council, which denied review on June 15, 2020.  (Tr. 1–6).

Plaintiff appealed to this Court, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).  On August 18, 2021, the magistrate judge granted the Commissioner's motion to reverse and remand the case pursuant to sentence four of 42 U.S.C. § 405(g).  (Tr. 757); *Swafford v. Kijakazi*, 4:20-cv-01062-DDN, ECF No. 33 (E.D. Mo. Aug. 18, 2021).  On February 01, 2022, the Appeals Council ordered the case reversed and remanded.  (Tr. 759–63).  In the remand order, the Appeals Council directed the ALJ to further consider Plaintiff's RFC during the relevant time period and properly discuss the supportability and consistency factors in evaluating the persuasiveness of the 2018 prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  (Tr. 761–62).

On remand, following another hearing, the same ALJ issued a decision on May 01, 2023, finding that Plaintiff was not disabled at any time between the June 16, 2016, alleged onset date and December 31, 2018, the date last insured.  (Tr. 657–58).  Plaintiff now appeals the May 01, 2023, decision.

## II.    Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d), 1382c(a)(3)(A).  A claimant will be found to have a disability "only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at § 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to his past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

A court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir.

2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision).  The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## III.    <u>The ALJ's Decision</u>

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the relevant time period between June 16, 2016, and December 31, 2018.  (Tr. 648).  At Step 2, the

4

ALJ found that, through the date last insured, Plaintiff had the severe impairments of degenerative disc disease, status post spinal fusion with radiculopathy and post laminectomy syndrome, sacroiliac joint dysfunction, anxiety, and obesity. *Id.* At Step 3, the ALJ found that Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. *Id.* Thus, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with environmental and postural limitations. (Tr. 650–51). Plaintiff can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance and stoop; and can never kneel, crouch, or crawl. *Id.* Plaintiff must avoid concentrated exposure to vibration and any exposure to unprotected heights and hazardous machinery. (Tr. 651). Plaintiff can perform simple, routine tasks, but he can have only minimal changes in job setting and duties, and he can have no contact with the general public. *Id.* At Step 4, the ALJ found Plaintiff could not return to his past relevant work as a drywall installer. (Tr. 656). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that, during the relevant time period, there were jobs in the national economy that Plaintiff could have performed, despite his limitations, such as assembler, product checker, and touch-up inspector. (Tr. 656–57). Consequently, the ALJ concluded that Plaintiff was not disabled under the Act between June 16, 2016, and December 31, 2018. (Tr. 657–58).

## IV.   <u>Discussion</u>

The specific issues in this case are (1) whether the ALJ properly considered Plaintiff's subjective complaints of pain, (2) whether the ALJ properly evaluated the medical opinion evidence, and (3) whether the ALJ failed to properly support the RFC with medical evidence of Plaintiff's ability to function in the workplace.

### 1. *The ALJ Properly Considered Plaintiff's Subjective Complaints of Pain*

Plaintiff argues the ALJ improperly evaluated his subjective complaints by discounting his symptoms without adequate consideration of the factors outlined in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ did not dispute that Plaintiff experienced pain during the relevant period of disability, she determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

"An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)). "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (citing *Polaski*, 739 F.2d at 1322). This includes evidence pertaining to (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) any functional restrictions. *See* 20 C.F.R. § 404.1529; *Polaski*, 739 F.2d at 1322. "Other factors also include the claimant's 'relevant work history and the absence of objective medical evidence to support the complaints.'" *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quoting *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001)). While the ALJ must consider the *Polaski* factors, she need not explicitly discuss each of them. *Id.* The Court will defer to the ALJ's credibility determination so long as it is supported by good reasons and substantial evidence. *Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017).

Here, the ALJ provided various reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms during the relevant time period were inconsistent with the evidence in the record as a whole. First, the ALJ properly considered Plaintiff's daily activities, as described in Plaintiff's function report and his wife's third-party function report, both of which were dated December 31, 2017. (Tr. 652). Plaintiff reported that he spent his days watching television and caring for his children, including feeding them, bathing them, and changing diapers. (Tr. 219–20, 652). Plaintiff also stated that he prepared meals and performed chores such as cleaning, washing laundry, mowing the lawn, and driving to stores to shop for groceries and other household needs. (Tr. 220–21, 652). Depending on the level of pain he was experiencing on any given day, Plaintiff said that the amount of time he spent on chores varied from five to thirty minutes. (Tr. 220). Plaintiff's wife's description of his daily activities outlined a similar level of function. (Tr. 229–36, 652). The ALJ found that Plaintiff's reported daily activities from 2017 were inconsistent with his 2019 and 2023 testimony regarding his diminished capacity for activities around the house, which suggested that Plaintiff's symptoms worsened since the date last insured. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); (Tr. 652).

Second, the ALJ properly discussed the objective medical evidence and found that it did not support the severity of Plaintiff's subjective complaints. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (explaining the lack of objective medical evidence to support a claimant's complaints is relevant in assessing credibility); 20 C.F.R. § 404.1529(c)(2) (considering objective medical evidence in evaluating intensity and persistence of symptoms); (Tr. 652–654). The ALJ noted that the medical records from June 2016 through December 31, 2018, showed that Plaintiff

had full muscle strength, normal reflexes, some decreased sensation in his right leg, some improvement of his pain symptoms with epidural injections and pain patches, and some decreased range of motion in the lumbar spine area. (Tr. 300–01, 310, 344, 346, 653–54). During a January 31, 2018, consultative examination with Dr. Arjun Bhattacharya, Plaintiff reported severe aching, spasms, and burning pain in lower back and right leg, but he also stated that he was able to walk about four blocks, sit for four hours, and lift thirty-five pounds. (Tr. 509, 653). Plaintiff said that he occasionally used a cane but was able to shop for groceries, cook, and wash laundry. *Id.* Dr. Bhattacharya noted that imaging of Plaintiff's lumbar spine showed that his prior L4-S1 fusion was solid and that the disc spaces above the level of the fusion were intact. (Tr. 512, 653). Plaintiff's straight leg-raising results were limited to forty degrees on the left and sixty degrees on the right, but his reflexes were normal. (Tr. 510, 653). In April 2018, Plaintiff's back pain was noted to be "fairly well controlled," (Tr. 525, 653), and in October 2018, Plaintiff reported that he had experienced more than fifty percent relief for over a month with caudal steroid injections (Tr. 573, 653). The ALJ also considered a May 01, 2019, MRI, which showed stable post-operative changes from the L4-S1 fusion, adequate decompression of the spinal canal, and no complications, disc herniation, or significant central canal stenosis. (Tr. 610, 653).

After discussing the foregoing evidence, the ALJ found that Plaintiff's surgical history, documentation of lower extremity limitations, and history of taking pain medications supported a finding that Plaintiff was limited to performing sedentary work with postural and environmental limitations during the relevant time period. (Tr. 652–654). Thus, the Court finds that the ALJ's discounting of Plaintiff's subjective complaints regarding the severity of his pain during the relevant time period was supported by good reasons and substantial evidence. *See Bryant*, 861 F.3d at 782–83; *see also McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that

8

if substantial evidence supports the Commissioner's decision, a court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome").

### 2. *The ALJ Properly Considered the Medical Opinion Evidence*

Plaintiff argues that the ALJ failed to properly evaluate Dr. Daniel Gwartney's prior administrative medical findings from March 01, 2018, and Dr. Mark Hingst's medical opinion from February 2023 because the ALJ did not adequately discuss the supportability and consistency factors in assessing their persuasiveness. For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of all of the medical opinions and prior administrative medical findings in a claimant's case record by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(a), (c).

In evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency, and the ALJ must "explain how [she] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the consistency or supportability

9

factor in assessing the persuasiveness of a medical opinion requires reversal. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (remanding where ALJ discredited a physician's opinion without discussing the factors contemplated in the regulations, as failure to comply with the opinion evaluation regulations was legal error)). "Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, 2:21-cv-0038-SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, 1:21-cv-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) (citing *Goss v. Kijakazi*, 4:21-cv-0663-LPR-JJV, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how she considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion; that the physician's opinion stems from a checklist; and that the physician did not consider certain evidence, examine the claimant, or provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting cases); *see also McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) ("[T]he opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records, including

relevant medical records made after the date of evaluation." (citing *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010))).  The consistency factor provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ adequately articulated her consideration of the supportability factor in determining that Dr. Gwartney's prior administrative medical findings and Dr. Hingst's medical opinion were not persuasive.  First, Dr. Hingst's opinion "was entitled to relatively little evidentiary value on its face, because it was rendered on a check box and fill in the-blank form." *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (explaining that a treating physician's opinion that consists of "conclusory statements—checked boxes, circled answer, and brief fill-in the-blank responses" and "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone);  *see also Starman*, 2021 WL 4459729, at *4 (stating that an ALJ may properly consider that the physician's opinion stems from a checklist or that the physician did not provide a detailed explanation for the opinion).  Second, as the ALJ noted in her decision, neither Dr. Hingst nor Dr. Gwartney explained what objective evidence supported their opinions regarding Plaintiff's need for certain environmental and postural limitations.  *See Starman*, 2021 WL 4459729, at *4 (stating that an ALJ may properly consider that the physician did not provide a detailed explanation for the opinion); (Tr. 67–71, 655, 1498–1500).  Third, Dr. Gwartney did not have the benefit of the medical records that post-dated his March 2018 opinion or Plaintiff's 2019 and 2023 testimony. *See McCoy*, 648 F.3d at 616 ("[T]he opinion of a nonexamining consulting physician is afforded

11

less weight if the consulting physician did not have access to relevant medical records, including relevant medical records made after the date of evaluation.").

The ALJ properly discussed the consistency factor in finding that Dr. Gwartney's and Dr. Hingst's opinions that Plaintiff had the ability to perform light work were unpersuasive, as they were inconsistent with Plaintiff's persistent complaints of pain while standing and walking and his need for strong pain medication, which indicated that Plaintiff was more properly limited to sedentary work with additional postural and environmental limitations. (Tr. 45–46, 67–71, 655, 1498–1500). The ALJ also discussed the consistency factor in rejecting some of Dr. Gwartney's and Dr. Hingst's proposed limitations because they were contradicted by the objective medical records, which stated that he had full muscle strength and normal reflexes in his lower extremities during the relevant disability period. *See* 20 C.F.R. § 404.1520c(c)(2) (providing that the more consistent a medical opinion or prior administrative medical finding is with evidence from the record, the more persuasive the medical finding will be); (Tr. 346, 509–11, 655). Thus, the Court finds that the ALJ adequately evaluated the medical opinion evidence under the regulations.

### 3. The ALJ's RFC Finding is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to properly support the RFC with some medical evidence of his ability to perform sedentary work. He asserts that, after finding the medical opinions of Dr. Gwartney and Dr. Hingst unpersuasive, the ALJ should have ordered a consultative examination ("CE").

The RFC is "the most [a claimant] can still do despite" his physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). "The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Casey v. Astrue*, 503 F.3d 687, 696–97 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004)).

"While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). "With the medical record adequately developed, the ALJ was not required to seek additional information . . . or order a CE." *Id.* (first citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016); and then citing 20 C.F.R. § 404.1519a(b)). This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)).

As an initial matter, the ALJ was not required to adopt or give additional weight to Dr. Gwartney's and Dr. Hingst's opinions simply because there is little medical opinion evidence in the record. *See Hensley*, 829 F.3d at 932 ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."); *see also Cox*, 495 F.3d at 619–20 (explaining that an ALJ is not required to seek clarification in the absence of medical opinions where medical records and other evidence support the RFC determination); *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (affirming the ALJ's RFC determination where ALJ properly considered the available medical and testimonial evidence, and the only opinion in the record was given little weight

13

because the doctor had not opened an official record for plaintiff and gave no opinion as to her condition during the relevant time period).

After considering the evidence in the record as a whole, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform sedentary work with postural and environmental limitations during the relevant period of disability. As outlined above, the ALJ evaluated all the available evidence, including Plaintiff's testimony from the prior 2019 hearing and the most recent 2023 hearing, Plaintiff's activities of daily living, and the objective medical records. (Tr. 651–56). The ALJ considered Plaintiff's reported daily activities from 2017—which included feeding and bathing his children, changing diapers, cleaning, washing laundry, mowing the lawn, and driving to the store to shop for groceries and personal items—and determined that they were inconsistent with his 2019 and 2023 testimony regarding his diminished capacity for activities around the house. *See Medhaug*, 578 F.3d at 817 ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); (Tr. 219–20, 229–36, 652).

The ALJ also properly discussed the objective medical evidence, *see Hensley*, 829 F.3d at 932 ("In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'") (alteration in original), and found that Plaintiff's surgical history, documentation of lower extremity limitations, and history of taking pain medications supported a finding that Plaintiff was limited to performing sedentary work with postural and environmental limitations during the relevant time period, *see, e.g.*, (Tr. 300–01, 310, 344, 346) (noting that Plaintiff had full muscle strength, normal reflexes, some decreased sensation in his right leg, some

14

improvement of his pain symptoms with epidural injections and pain patches, and some decreased range of motion in the lumbar spine area); (Tr. 509) (stating that, while Plaintiff reported aches, spasms, and pain in his lower back and right leg, he also stated that he was able to walk about four blocks, sit for four hours, lift thirty-five pounds, shop for groceries, cook, and wash laundry); (Tr. 525) (noting that Plaintiff's back pain was noted to be "fairly well controlled").

Because "the medical record was adequately developed, the ALJ was not required to seek additional information . . . or order a CE." *Hensley*, 829 F.3d at 932. Additionally, the Court finds that there was sufficient medical evidence and other evidence of record supporting the ALJ's conclusion that Plaintiff had the RFC to perform sedentary work with additional restrictions. *See Austin*, 52 F.4th at 730.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 31st of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE